(No. 66372.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DANIEL LINDNER, JR., Appellee.

*Opinion filed February 22, 1989.*

CALVO, J., took no part.
MILLER, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney and Robert Ruiz, Solicitors General, of Chicago, and Stephen J. Rotello, Assistant Attorney General, of counsel), for the People.

Theodore J. Bednarek, of Troha, Troha & Bednarek, Ltd., and Richard B. Orloff, both of Joliet, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

The State brings this direct appeal pursuant to Rule 302(a) (107 Ill. 2d R. 302(a)) from a judgment of the circuit court of Will County which held unconstitutional sections 6—204(a)(1) and 6—205(b)(2) of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1987, ch. 95½, pars. 6—204(a)(1), 6—205(b)(2)). These sections provide that upon conviction of certain sex offenses, the offender's driver's license is subject to mandatory revocation. The

issue on appeal is whether the cited statutory provisions violate defendant's right to due process of law.

## BACKGROUND

On September 22, 1987, defendant pleaded guilty and was convicted of one count of criminal sexual assault and two counts of aggravated criminal sexual abuse. (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(3); Ill. Rev. Stat. 1985, ch. 38, par. 12—16(b).) The victims were defendant's two stepdaughters, who were both under the age of 18 years when the acts were committed.

On November 12, 1987, after a hearing, the court sentenced defendant to 36 months' probation, subject to various conditions. After the sentence was imposed, defendant moved the court to refuse to forward defendant's driver's license and the reports of his convictions to the Secretary of State for mandatory revocation as required by the challenged statutory provisions. In support of his motion, defendant contended, among other things, that the application of the statute deprived him of life, liberty or property without due process of law. In this court, defendant submits the same contention and further contends that the statute violates the separation of powers provision of the Illinois Constitution (Ill. Const. 1970, art. II, §1).

In an order entered November 30, 1987, the trial court ruled that section 6—204(a)(1) of the Code, in conjunction with section 6—205(b)(2) of the Code, denies the defendant due process of law in violation of the Illinois and United States Constitutions. Accordingly, the court held these provisions to be invalid. It is undisputed, and the court specifically found, that a motor vehicle was not involved in the commission of the offenses for which defendant was convicted. Having found the statute to be unconstitutional, the court did not require the defendant to surrender his license.

## OPINION

Legislative enactments carry a strong presumption of constitutionality, and the party challenging the statute has the burden of clearly establishing its invalidity. (*People v. Inghram* (1987), 118 Ill. 2d 140, 146.) For the reasons set forth below, we conclude that defendant in this case has sustained his burden.

We begin our analysis by setting out the relevant statutory provisions. Section 6—204(a)(1) of the Code provides as follows:

> "When Court to forward License and Reports. (a) For the purpose of providing to the Secretary of State the records essential to the performance of the Secretary's duties under this Code to revoke or suspend the driver's license and privilege to drive motor vehicles of persons found guilty of the criminal offenses or traffic violations which this Code recognizes as evidence relating to unfitness to safely operate motor vehicles, the following duties are imposed upon public officials:
>
> 1. Whenever any person is convicted of any offense for which this Code makes mandatory the revocation of the driver's license or permit of such person by the Secretary of State, the judge of the court in which such conviction is had shall require the surrender to the clerk of the court of all driver's licenses or permits then held by the person so convicted, and the clerk of the court shall, within 10 days thereafter, forward the same, together with a report of such conviction, to the Secretary." Ill. Rev. Stat. 1987, ch. 95½, par. 6—204(a)(1).

Section 6—205(b)(2) of the Code provides that conviction of certain sex offenses will result in mandatory revocation of the offender's license. That section provides as follows:

> "(b) The Secretary of State shall also forthwith revoke the license or permit of any driver in the following situations:
> ***

2. Of any driver, upon receiving notice from the clerk of the court of the conviction of such driver for the commission of any of the following sex offenses: criminal sexual assault, aggravated criminal sexual assault, criminal sexual abuse, aggravated criminal sexual abuse, juvenile pimping, soliciting for a juvenile prostitute and the manufacture, sale or delivery of controlled substances or instruments used for illegal drug use or abuse." (Ill. Rev. Stat. 1987, ch. 95½, par. 6—205(b)(2).)

Similar provisions have been in effect since 1961. See Ill. Rev. Stat. 1961, ch. 95½, par. 6—205(d).

We initially determine the applicable standard of review. It is clear from the decisions of this court that the rational-basis test applies in this case. A driver's license is a property interest for purposes of the due process clause. (*People v. Orth* (1988), 124 Ill. 2d 326, 334; *People v. Esposito* (1988), 121 Ill. 2d 491, 504.) The interest in a driver's license, while important, is not fundamental in the constitutional sense. *Orth*, 124 Ill. 2d at 335; see also *Koss v. Slater* (1987), 116 Ill. 2d 389, 397 (difficulties arising from suspension of driver's license—inability to drive to work, to obtain food, clothing and medical attention—are inconveniences, not the curtailment of fundamental rights).

It is well established that where, as here, the statute under consideration does not affect a fundamental constitutional right, the appropriate standard of review is the rational-basis test. (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 228-29, citing *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 488, 99 L. Ed. 563, 572, 75 S. Ct. 461, 464; *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 367-68.) We note that, unlike decisions addressing summary suspension provisions of the Code (*e.g., Orth*, 124 Ill. 2d 326; *Esposito*, 121 Ill. 2d 491), the case before us does not implicate *procedural* due process rights. Defendant here is not complaining

about lack of notice and a hearing. Rather, he contends that the statute violates due process because it is an unreasonable and arbitrary exercise of the State's police power. See *People v. Wick* (1985), 107 Ill. 2d 62, 63.

Under the rational-basis test, a " 'legislative enactment must bear a reasonable relationship to the public interest intended to be protected, and the means adopted must be a reasonable method of accomplishing the desired objective.' " (*Wick*, 107 Ill. 2d at 65-66, quoting *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453; see also *Harris*, 111 Ill. 2d at 368 (statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory, citing *Illinois Gamefowl Breeders*, 75 Ill. 2d at 453).) In applying this test, we identify the public interest that the statute is intended to protect, examine whether the statute bears a reasonable relationship to that interest, and determine whether the method used to protect or further that interest is reasonable. *Wick*, 107 Ill. 2d at 66.

The principal point of contention between the parties is the first step in the analysis: identifying the public interest the statute is intended to protect—in other words, the purpose of the statute. Defendant contends, relying on section 6—204(a) of the Code, set out above, that the purpose of the statute is the safe operation of motor vehicles, and since the legislature has stated its purpose in that section, we may consider no other. The State contends that because we must uphold the statute if there is any conceivable basis for finding a rational relationship (see *Harris*, 111 Ill. 2d at 368), we must consider purposes other than that stated in section 6—204(a). The State appears to concede that if safety is the only purpose of the statute, the challenged provision bears no rational relationship to the statute's purpose and therefore revocation of defendant's license is unconstitutional. (At

one point in its brief, the State says that "it will be assumed for this portion of the argument that there is no rational relationship between commission of a sex offense and safe operation," yet nowhere in its brief does the State argue that such a relationship exists.)

We turn, then, to a consideration of the public interest the statute is intended to protect. It is fundamental that in determining the intent of the legislature, we are to consider " 'the statute in its entirety, noting the subject it addresses and the legislature's apparent objective in enacting it.' " (*People v. Maya* (1985), 105 Ill. 2d 281, 285, quoting *Gill v. Miller* (1983), 94 Ill. 2d 52, 56.) Thus we consider not only the statement of purpose in section 6—204(a) but also the substantive provisions of section 6—205. With the exception of section 6—205(b)(2), every subsection of sections 6—205(a) and (b) has some affinity with a motor vehicle—either the operation or ownership of the vehicle, or the paperwork connected to such operation or ownership. See, *e.g.*, section 6—205(a)(1) (reckless homicide resulting from operation of motor vehicle); section 6—205(a)(2) (driving under the influence of alcohol or drugs); section 6—205(a)(7) (automobile theft); section 6—205(a)(5) (perjury or making of false affidavit or statement under oath to Secretary of State relating to ownership or operation of motor vehicle).

We find particularly significant section 6—205(a)(3), which provides for mandatory revocation upon conviction of any felony under State or Federal law in the commission of which a motor vehicle was used. By this provision, the legislature specified that a person's license will be revoked upon conviction of a felony if, and only if, a vehicle was used in the commission of that felony. Yet section 6—205(b)(2) specifies several offenses, the majority of which are felonies, and provides that these offenses will result in revocation regardless of whether a vehicle was used in their commission. We think section

6—205(a)(3) clearly reflects the legislature's intent that revocation be tied to offenses involving the use of a motor vehicle. Section 6—205(b)(2) is wholly inconsistent with that intent.

As we have said, the legislature's intent is to be determined from the statute in its entirety, including the subject it addresses. The challenged provision is part of the Illinois Vehicle Code. The Code addresses subjects ranging from vehicle title and registration to financial responsibility; all have some connection to motor vehicles. The stated purpose is to ensure that drivers who have demonstrated they are unfit to safely operate vehicles are not allowed to drive. With the exception of the challenged provision (as well as section 6—205(b)(3), which provides for revocation for five years upon conviction of a second sex offense), the enumerated offenses in sections 6—204 and 6—205 all have some connection to operating or owning a vehicle not only safely, but legally. For these reasons, we conclude that the public interest the statute was intended to protect is the interest in keeping the roads free of two kinds of drivers: those who threaten the safety of others, and those who have abused the privilege to drive by doing so illegally (e.g., by fraudulently obtaining a driver's license) or by using a vehicle to commit a criminal act. In short, the public interest is the safe and legal operation and ownership of motor vehicles.

Having identified the public interest at stake, we next examine whether the statute bears a reasonable relationship to that interest. We readily conclude that it does not, and as we have noted, the State does not argue otherwise. Because a vehicle was not involved in any way in the commission of the offenses for which defendant was convicted, the revocation of his license bears no relationship, much less a reasonable one, to the public interest

we have identified. The same is true of the other offenses enumerated in section 6—205(b)(2).

Moreover, the method used to further the public interest is not reasonable. Keeping off the roads drivers who have committed offenses not involving vehicles is not a reasonable means of ensuring that the roads are free of drivers who operate vehicles unsafely or illegally. To the contrary, the means chosen are arbitrary, not only because the offenses specified in section 6—205(b)(2) have no connection to motor vehicles, but also because the inclusion of those offenses and no others is arbitrary. That is, no reason suggests itself as to why the legislature chose the particular offenses enumerated in section 6—205(b)(3), as opposed to other offenses not involving a vehicle.

For these reasons, we hold that the challenged provision is an unreasonable and arbitrary exercise of the State's police power in violation of the constitutional guarantee of due process and is therefore invalid.

The State contends that under the rational-basis test, we are not limited by the statement of purpose found in the statute and may, indeed must, consider any conceivable basis for the challenged provision. Further, the State argues, in a somewhat circular fashion, as follows. This court's duty is to construe acts of the legislature so as to affirm their constitutionality and validity, if that can be reasonably done. (*E.g., Sayles v. Thompson* (1983), 99 Ill. 2d 122, 125.) The State assumes *arguendo* that revocation of a sex offender's license is not related to the offender's fitness to operate a vehicle. Given that assumption, if we determine the statute's purpose only by reference to its stated purpose, we necessarily will find that the provision is unconstitutional. It follows, according to the State, that we must determine that the statute has purposes other than safety in order to fulfill our duty to uphold its constitutionality.

The State's argument is unpersuasive. In the first place, the rational-basis test, although a deferential standard of review, " 'is not a toothless one.' " (*Mathews v. De Castro* (1976), 429 U.S. 181, 185, 50 L. Ed. 2d 389, 394, 97 S. Ct. 431, 434, quoted in *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 439, 71 L. Ed. 2d 265, 280, 102 S. Ct. 1148, 1160 (Blackmun, J., concurring).) Second, our duty to uphold the constitutionality of legislative enactments is always subject to the qualification that we must do so if that can be reasonably done. It is no less our duty to strike down legislation that plainly violates the Constitution. Third, we have ascertained the purpose of the statute by considering not only the stated purpose—safe operation—but also the legislation as a whole.

But even if we consider the purposes identified by the State, the statute fails to pass constitutional muster. The first purpose identified by the State is punishment. As a preliminary matter, we will assume *arguendo* that revocation after conviction constitutes punishment, notwithstanding our decisions which have held that summary suspension of a license before a trial on the merits is an administrative function and not a punishment. *People v. Esposito* (1988), 121 Ill. 2d 491, 501; *Koss v. Slater* (1987), 116 Ill. 2d 389, 395.

We fail to see, however, how identifying the purpose as punishment cures the constitutional infirmity. The revocation of defendant's license would then be an additional penalty for a criminal offense, and the same rational-basis test would apply. (See, *e.g.*, *People v. Wick* (1985), 107 Ill. 2d 62 (aggravated arson statute, including penalty provision, reviewed under rational-basis test); *People v. Wagner* (1982), 89 Ill. 2d 308 (same—drug offense statute).) The penalty of license revocation bears no relationship to the offense. Moreover, if punishment is the purpose, the statute is arbitrary for the

same reason we identified earlier. There is no rational basis for choosing the particular offenses in section 6—205(b)(2), as opposed to other offenses not involving a vehicle, to receive the punishment of revocation. If the legislature may punish these offenses with revocation, nothing prohibits it from imposing that penalty for violating *any* provision of the Criminal Code, a result that would be plainly irrational.

The State also argues that deterrence is a legitimate purpose of the challenged provision. If this is the statute's purpose, it clearly cannot meet the rational-basis test. We will accept the State's argument that where deterrence is the purpose, it need not be shown that the statute in fact deters anyone. (See *Doe v. Edgar* (N.D. Ill. 1982), 562 F. Supp. 66, 70, *aff'd* (7th Cir. 1983), 721 F.2d 619.) However, the proposition that the legislature might have thought that the loss of driving privileges will deter persons from committing the sex and drug offenses listed in section 6—205(b)(2), all but one of which are felonies punishable by imprisonment, is simply not rational.

The State, in a concluding paragraph, mentions several other State interests that might be served by revocation of defendant's license, such as keeping sex offenders near home where they may be more easily recognized. Despite the fact that the State's contentions are unsupported by argument or authority and are therefore waived (*Brown v. Tenney* (1988), 125 Ill. 2d 348, 362; 107 Ill. 2d R. 341(e)(7)), we have considered these contentions and find them to be without merit.

Finally, we note that the General Assembly has recently enacted legislation that is relevant to this appeal. ("An Act in relation to certain controlled substances and cannabis violations" (the Act), Pub. Act 85—1259, eff. Jan. 1, 1989.) Section 3 of the Act amends the Illinois Vehicle Code by repealing the provision at issue in this

case, section 6—205(b)(2), and adding a new provision to section 6—206, section 6—206(a)(29). Under the former legislation, revocation is mandatory upon conviction of any of the enumerated offenses. Under the new legislation, the Secretary of State is granted the discretionary authority to suspend or revoke driving privileges, without a preliminary hearing, upon conviction of any of the same offenses. The Act became effective on January 1, 1989. However, the Act provides, in new section 6—205(f) of the Code, that any revocation imposed pursuant to section 6—205(b)(2) that is in effect on December 31, 1988, shall be converted to a suspension for a like period of time. We have considered these changes to the applicable statute and find they do not affect our disposition of the case.

For the foregoing reasons, we hold that section 6—205(b)(2) of the Illinois Vehicle Code violates the due process clauses of the Illinois and United States Constitutions and is therefore invalid. Accordingly, the judgment of the circuit court is affirmed. In light of our disposition, we need not address the other contentions made by defendant.

*Judgment affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that the mandatory revocation of a sex offender's driver's license, as provided in section 6—205(b)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—205(b)(2)), is a denial of due process. Accordingly, I dissent.

The defendant pleaded guilty to one count of criminal sexual assault and two counts of aggravated criminal

sexual abuse; the victims of the offenses were the defendant's two stepdaughters. At the sentencing hearing, testimony of the defendant and the older stepdaughter, then aged 14, disclosed that the defendant had engaged in sexual activity with the older child for several years and with the younger child for a shorter period. By the time of the sentencing hearing, the defendant was divorced from the victims' mother and was no longer living with the family. Indeed, an order of protection had been issued in the divorce proceeding, forbidding the defendant to approach within 100 feet of his former wife and stepdaughters. The defendant was employed, earning more than $800 a week, and was paying his former wife $125 a month in maintenance. Also, the defendant was attending a program of counseling designed for sex offenders.

The trial judge sentenced the defendant to 36 months' probation, extended the protective order for a like period of time, and ordered the defendant to continue undergoing psychological counseling. At the conclusion of the hearing, defense counsel made a motion requesting that the trial judge not forward the defendant's driver's license and record of conviction to the Secretary of State for revocation, as required by sections 6—204(a)(1) and 6—205(b)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, pars. 6—204(a)(1), 6—205(b)(2)). The trial judge subsequently granted the motion, declaring the provisions unconstitutional. In a written order, the judge noted that the defendant had not used a motor vehicle in committing the offenses here. The trial judge found that there was no public transportation between Naperville, where the defendant resided with his mother, and either Franklin Park, where the defendant was employed, or Bolingbrook, where the defendant attended counseling. The trial judge also found that the defendant would be unable to pay for

counseling and maintenance if he lost his job and would be unable to attend counseling if he lost his driver's license. The trial judge concluded that sections 6—204(a)(1) and 6—205(b)(2) of the Vehicle Code denied the defendant due process under both the Federal and State Constitutions. Accordingly, the trial judge did not demand that the defendant surrender his driver's license to the court.

The broad power of the legislature to define offenses and prescribe penalties is subject, of course, to the requirements of due process. (*People v. Upton* (1986), 114 Ill. 2d 362, 373.) When a fundamental right is not implicated, a party challenging a statute as violative of substantive due process must establish that the measure is not rationally related to a legitimate governmental interest. (*People v. Kohrig* (1986), 113 Ill. 2d 384, 397-98.) In this case, however, it appears that the trial judge invalidated the license revocation provision at issue here because of the personal inconvenience its operation would have caused the defendant. In affirming the circuit court's judgment, the majority opinion takes a somewhat different approach and looks instead at what it believes to be the legislative purposes of the provision, the safe and legal operation of motor vehicles. Although purporting to apply the rational basis test, the majority concludes that section 6—205(b)(2) is an arbitrary and unreasonable exercise of the police power and therefore upholds the lower court's decision striking the statute as a denial of due process. As I shall demonstrate, the majority achieves this result only by adopting an unnecessarily crimped view of the purpose of the legislation and the interests served by it. It should be noted that the only question before us concerns the constitutionality, and not the wisdom, of the provision.

The majority begins its search for legislative intent by examining a companion provision, section 6—205(a)(3)

of the Vehicle Code, which requires license revocation whenever a driver is convicted of "[a]ny felony under the laws of any State or the federal government in the commission of which a motor vehicle was used." (Ill. Rev. Stat. 1987, ch. 95½, par. 6—205(a)(3).) The majority interprets section 6—205(a)(3) as allowing license revocation "if, and only if, a vehicle was used in the commission of [the] felony" and dismisses, as "wholly inconsistent with that intent," the provision at issue here, section 6—205(b)(2), which requires license revocation upon a driver's conviction of certain sex or drug offenses even if a motor vehicle is not involved in their commission. 127 Ill. 2d at 181-82.

While it is certainly true that, under section 6—205(a)(3), revocation will occur if a vehicle is used in the commission of any felony, it is by no means the case that revocation may occur only if a vehicle is used. Thus, the majority's conclusion that "section 6—205(a)(3) clearly reflects the legislature's intent that revocation be tied to offenses involving the use of a motor vehicle" (127 Ill. 2d at 181-82) is completely unwarranted.

The majority next focuses its attention on what it considers to be the general purpose of the driver's license revocation and suspension provisions. The majority purports to find that purpose in section 6—204(a) of the Vehicle Code, which makes reference to the statutory duty of the Secretary of State to revoke the licenses of drivers "found guilty of the criminal offenses or traffic violations which this Code recognizes as evidence relating to unfitness to safely operate motor vehicles." (Ill. Rev. Stat. 1987, ch. 95½, par. 6—204(a).) Relying on that statement, the majority concludes that the goal of the revocation and suspension scheme is limited to the promotion of highway safety.

I do not believe, however, that section 6—204(a) was intended to express an overarching purpose applicable to

all the various grounds for license revocation and suspension. Notably, the statement of purpose now found in section 6—204(a) predates the enactment of the statute at issue here. The reference to the safe operation of motor vehicles was originally enacted in 1953 (see Ill. Rev. Stat. 1953, ch. 95½, par. 73.32); the provision in section 6—205(b)(2) requiring license revocation for sex offenders was not passed until 1961 (see Ill. Rev. Stat. 1961, ch. 95½, par. 6—205(d)). It thus appears that the legislature failed to update section 6—204(a) to reflect the different rationales of later additions to the statutory scheme. Nor is section 6—205(b)(2) the only ground for revocation that is not directly related to highway safety. For example, revocation is required for one convicted of "[p]erjury or the making of a false affidavit or statement under oath to the Secretary of State under this Code or under any other law relating to the ownership or operation of motor vehicles." (Ill. Rev. Stat. 1987, ch. 95½, par. 6—205(a)(5).) License revocation in that instance, while not arbitrary or unreasonable, is similarly unrelated to highway safety. In fact, the purpose of the license revocation and suspension scheme is broader than one can know merely by inspecting the grounds set out in sections 6—204 and 6—205 of the Vehicle Code. Section 6—205(b)(4) requires revocation of the driver's license "[o]f any person when any other law of this State requires either the revocation or suspension of such license or permit." (Ill. Rev. Stat. 1987, ch. 95½, par. 6—205(b)(4).) Thus, the general statement of intent found in section 6—204(a), with its reference to highway safety, cannot accommodate the entire range of grounds mandating license revocation or suspension. To be sure, the majority concedes the point, recognizing that the statutory scheme must actually serve at least one additional purpose not specified in the general statement of intent,

that of promoting the legal operation of motor vehicles. 127 Ill. 2d at 182.

Having invalidated section 6—205(b)(2) as an arbitrary and unreasonable exercise of the police power, the majority summarily rejects the State's analysis of the statute. As I have indicated, the majority's search for legislative intent is misdirected. There is, of course, a governmental interest served by section 6—205(b)(2), and it is apparent from the plain language of the provision. Mobility plays a large role both in the commission of offenses and in offenders' escape from detection and apprehension. As the State suggests, it seems clear that the legislature considered that license revocation would, in no small part, reduce the mobility of offenders and that the immobilization of certain classes of offenders would be an appropriate consequence of their conviction for the specified offenses. I do not believe that we should overturn that judgment, and, on that basis, I would uphold the validity of the statute.

Finally, I note that today's decision invalidates not only the portion of section 6—205(b)(2) that is at issue in this case, relating to convictions for criminal sexual assault and criminal sexual abuse, but the rest of the provision also, involving other sex offenses and certain drug offenses. Although the issue is not before us, for the same reasons I dissent from that portion of the majority opinion as well.